# United States District Court

**EASTERN** DISTRICT OF **MICHIGAN**  5

| | |
|---|---|
| UNITED STATES OF AMERICA | **CRIMINAL COMPLAINT** |
| V. | |
| D-1 FIRAS ANTOIN, <br> D-2 BASHAR BABBIE, | CASE NUMBER: <br> **04-80962** |
| (Name and Address of Defendant) | |

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. From on or about October 12, 2004 until on or about November 10, 2004, in the Counties of Wayne and Oakland County, in the Eastern District of Michigan defendant(s) did, (Track Statutory Language of Offense)

**KNOWINGLY CONSPIRE AND INTENTIONALLY POSSESS WITH INTENT TO DISTRIBUTE A CONTROLLED SUBSTANCE, 3, 4 METHYLENEDIOXYMETHAMPHETAMINE (MDMA),**

in violation of Title 21, United States Code, Section(s) 841(a) and 846
I further state that I am an ICE SPECIAL AGENT and that this complaint is based on the following facts:

**(SEE ATTACHED AFFIDAVIT)**

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

FILED NOV 23 2004 CLERK'S OFFICE DETROIT

Signature of Complainant
Mark O'Hare, Special Agent

Sworn to before me and subscribed in my presence,

November 23, 2004                at    Detroit, Michigan
Date                                   City and State

DONALD A. SCHEER
United States Magistrate Judge
Name & Title of Judicial Officer          Signature of Judicial Officer

## AFFIDAVIT

I, Mark A. O'Hare, being duly sworn, depose and state the following:

1. I am a Special Agent employed by the U.S. Department of Homeland Security, Immigration and Customs Enforcement (ICE). I have been employed by ICE (formally U.S. Customs Service) since 1996. My responsibilities and duties include the investigation and enforcement of laws and regulations including narcotics and financial violations. I am trained and experienced in the methods used by narcotics traffickers to smuggle and distribute controlled substances into the United States.

2. The information set forth in this affidavit is based upon my knowledge and investigation, as well as investigations conducted by fellow law enforcement officers. I know it is a violation of law to knowingly and intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance, to wit: 3, 4 Methylenedioxymethamphetamine (MDMA/Ecstasy). This affidavit is being submitted for the limited purpose of establishing probable cause to support issuing a criminal complaint, and therefore does not include all the facts that have been learned during the course of the investigation.

3. On July 23, 2004, ICE Agents received information from a confidential source (CS) regarding the illegal smuggling and distribution of ecstasy (MDMA) from Windsor, Ontario, Canada into Detroit, Michigan. The CS advised agents that while in Windsor, Ontario he was introduced to an individual who is known to be a supplier of large quantities of ecstasy. The CS stated that this individual wanted to recruit him to distribute ecstasy in the United States. According to the CS, the aforementioned supplier claimed to be able to provide any amount of ecstasy the CS needed, but primarily dealt in large quantities (several thousand tablets). The supplier explained to the CS that he charged $3.50 per ecstasy tablet in Canada and $5.00 per tablet to have them transported to the United States. The supplier indicated to the CS that if he preferred to have the ecstasy brought to the United States, he had individuals in the Detroit area who could deliver it to him. Since the initial meeting with the supplier, the CS has spoken to the supplier numerous times and, at the direction of ICE Agents, has arranged to have ecstasy delivered on four separate occasions.

4. On October 11, 2004, the CS spoke with his ecstasy supplier in Canada, via telephone, and negotiated the delivery and purchase of 500 pills of ecstasy for $2500. The supplier advised the CS that Firas (identified as Firas ANTOIN-DOB 6/15/76) would deliver the ecstasy and told the CS to negotiate the delivery specifics, i.e. time and place, with him.

5. On October 11, 2004 and October 12, 2004, the CS, through a series of recorded phone conversations with ANTOIN and the supplier in Canada, negotiated the delivery and purchase of 500 pills of ecstasy from ANTOIN. Through these conversations, it was established that ANTOIN would deliver 500 pills of ecstasy to the CS at the Taco Bell restaurant at the corner of Warren and Wyoming in Dearborn, Michigan at 12:30pm on October 12, 2004.

6. On October 12, 2004, at approximately 12:00pm, the ICE CS arrived at the aforementioned Taco Bell restaurant. ICE and DEA Agents established surveillance in and around the restaurant to monitor the transaction. At approximately 12:50pm, agents observed ANTOIN arrive at the restaurant in a dark color, late model, 4-door Oldsmobile Alero with a temporary tag in the rear window. The vehicle was occupied by ANTOIN in the front passenger seat and another Arabic male driving (later identified as Bashar BABBIE-DOB 7/14/74). The Alero parked adjacent to the CS's vehicle where the CS was waiting. ANTOIN exited the Alero and entered the CS's vehicle. ANTOIN and the CS spoke briefly about the ecstasy being "Addidas" tablets. Counting each of the five 100 tablet packages, ANTOIN handed the ecstasy tablets to the CS. The CS then gave ANTOIN $2500 (provided to him by ICE Agents). ANTOIN advised the CS he would have other types of ecstasy in the near future, including "Mercedes" and others. ANTOIN exited the CS's vehicle, re-entered the Alero with BABBIE and departed the restaurant parking lot. Surveillance agents observed ANTOIN and BABBIE as they drove to ANTOIN's residence located at 3229 Metro Parkway, Sterling Heights, Michigan. Both ANTOIN and BABBIE entered the residence. ICE Agents subsequently seized the ecstasy tablets provided by ANTOIN. A total of 492 tablets were seized; a random selection of tablets field-tested positive for ecstasy.

7. Between the dates of November 6, 2004 and November 10, 2004, the ICE CS, through a series of recorded phone conversations with ANTOIN, negotiated the delivery and purchase of 2000 "pink heart" ecstasy tablets from ANTOIN for $9,000. During these conversations, it was established that ANTOIN and the CS would conduct the transaction at Chili's Restaurant located at the Oakland Mall in Troy, Michigan on November 10, 2004 at approximately 4:00pm.

8. On November 10, 2004, the CS arrived at the aforementioned Chili's Restaurant. ICE and DEA Agents established surveillance in and around the restaurant to monitor the transaction. Additionally, agents established surveillance at ANTOINS residence located at 3229 Metro Parkway, Sterling Heights, Michigan. At approximately 4:10pm, surveillance observed a dark color, 4-door, Oldsmobile Alero, with a temporary tag in the rear window, occupied by a white Arabic male driver (identified as Basher BABBIE) arrive at ANTOIN's residence. BABBIE entered the residence and departed a few moments later in the Alero with ANTOIN. At approximately 4:20pm, ANTOIN and BABBIE returned to ANTOIN's residence in the Alero. ANTOIN entered the residence, exited a few moments later and again departed with BABBIE in the Alero. At approximately 4:32pm, ANTOIN and BABBIE arrived at the Oakland Mall in the Alero. ANTOIN and BABBIE parked the vehicle in the mall parking lot, exited the vehicle and walked to the Chili's Restaurant parking lot. ANTOIN and BABBIE met the CS in the parking lot at Chili's and entered the CS's vehicle. The CS, with ANTOIN and BABBIE, drove his vehicle a short distance to BABBIE's Alero in the mall parking lot. ANTOIN went to BABBIE's Alero, retrieved a box and returned to the CS's vehicle. ANTOIN gave the box to the CS; the CS opened the box and observed several vacuum sealed bags with pink, heart shaped pills. The CS then retrieved $9,000 from the center consol of his vehicle (placed there by ICE Agents) and gave it to ANTOIN. ANTOIN counted the money and briefly spoke to the CS about the pills. After the brief discussion, ANTOIN and BABBIE exited the CS's vehicle, returned to BABBIE's Alero and departed the mall parking lot at approximately 4:50pm. At approximately 5:15pm, ICE surveillance near ANTOIN's residence observed ANTOIN and BABBIE arrive at ANTOIN's residence and enter the house. ICE Agents subsequently seized the tablets provided by ANTOIN. A total of 2012 tablets were seized. Field-testing of a random selection of the seized tablets was inconclusive. Initial lab results of a random selection of tablets revealed they did not contain MDMA.

9.  Based on the foregoing facts, I believe that there is probable cause to conclude that on or about October 12, 2004 through on or about November 10, 2004 Firas ANTOIN and Bashar BABBIE did knowingly conspire and intentionally possess with intent to distribute a controlled substance, specifically ecstasy, in direct violation of Title 21 USC 841(possession and distribution of a controlled substance).

Mark A. O'Hare, Special Agent
U.S. Department of Homeland Security
Immigration and Customs Enforcement

Sworn to before me and subscribed to in my presence this 23rd day of November, 2004.

_Donald A. Scheer_
Honorable United States Magistrate Judge